IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HOUSTON BALLOONS & PROMOTIONS, LLC. Plaintiff, | § § § § | |
| versus | § § | CIVIL ACTION NO. H-06-3961 |
| THE CITY OF HOUSTON Defendant. | § § § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

On June 10 and June 11, 2009, a bench trial was held in the above-styled case. Having considered the evidence in this case and the applicable law, the Court enters the following findings of fact and conclusions of law. Any finding of fact that is more appropriately characterized as a conclusion of law shall be so construed.

### I. Findings of Fact

Plaintiff Houston Balloons & Promotions, LLC is a Texas limited liability company with its principal place of business in Spring, Harris County, Texas. Plaintiff Purtee & Associates, Ltd. is a Texas limited liability partnership, also with its principal place of business in Spring, Harris County, Texas. Houston Balloons & Promotions, LLC is the general partner of Purtee & Associates, Ltd. At all times material to this case, Houston Balloons & Promotions, LLC and Purtee & Associates, Ltd. together owned and operated the business known as Houston Balloons and Promotions ("Houston Balloons" or "Plaintiffs"). Houston Balloons leases, erects and maintains standard and customized inflatable balloons to its customers in and around the City of Houston, Texas ("City") for the purpose of advertising and promoting their businesses. Jim Purtee ("Purtee") is the President and principal owner of Houston Balloons.

Defendant, the City of Houston, Texas ("City" or "Defendant") is a municipality duly formed and operating under the laws of the State of Texas. In 1980, the City enacted the Houston Sign Code, City of Houston Building Code, Chapter 46, Houston Code of Ordinances ("Sign Code"), which applies to all "signs" as that term is defined in the Sign Code. Section 4602 of the Sign Code defines the term "sign" as follows:

> SIGN shall mean any outdoor display, design, pictorial or other representation that shall be so construed, placed, attached, painted, erected, fastened, or manufactured in any manner whatsoever so that the same shall be used for advertising.

Section 4604 of the Sign Code establishes a City Sign Administration, headed by a Sign Administrator, to administer and enforce the Sign Code and all other City laws related to signs. The Sign Administration's duties include issuing permits as required by Section 4605 of the Sign Code, making inspections, and taking appropriate action to enforce the Sign Code in instances of noncompliance. The Sign Administration has a staff of inspectors who investigate possible violations of the Sign Code and related laws. Sign Administration inspectors issue written warning notices of violations ("NOVs"), which require the removal of signs that violate the law. Sign Administration inspectors also issue citations and fines for failing to honor the warning notices. Susan Luycx ("Luycx") is the City's Sign Administrator, and she served in this role during the time period relevant to this suit.

In 1993, the City added Section 28-37 to the City Code by Ordinance No. 93-906. Section 28-37, which was not included in the Sign Code, set forth the City's laws regarding attention-getting devices ("AGDs"). HOUSTON, TEX. CODE, ch. 28, art. I, § 28-37 (2005). The ordinance included the following preamble provisions:

> WHEREAS, the City Council of the City of Houston finds that such attention-getting devices pose substantial problems of traffic safety and visual aesthetics similar to and, in many instances, more serious than, conventional commercial advertising signs; and WHEREAS, the City Council of the City of Houston finds that the proliferation such attention-getting devices within the City adversely affects the aesthetic environment, safety and quality of life of the citizens of the City of Houston; . . .

Section 28-37 provided the definition for an AGD as follows:

> Attention-getting devices shall mean devices erected, placed or maintained so as to attract attention to any commercial business, or any goods, products or services available on the premises of the commercial business, which shall include but, not be limited to, the following: banners; cut-out figures; discs, festooning; inflatable objects, including balloons; non-governmental flags; pennants; propellers; steam-or smoke-producing devices; streamers; whirligigs; blinking, rotating, moving, chasing, flashing, glaring, strobe, scintillating, search, flood or spot lights; or similar devices; any of which are located or employed in connection with the conduct of a commercial business.

Inflatable advertising devices, such as those leased by Houston Balloons, were AGDs within the definition of Section 28-37. Section 28-37(b) also provided that "[i]t shall be unlawful for any person to place, erect, maintain, or display any attention-getting devices on any private or public property within the city . . ." for more than forty-four days in any one calendar year.

AGDs are not "signs" as defined in the Sign Code; however, if an AGD displays a certain type of message on it, it may be subject to the provisions of the Sign Code. Section 28-37(a) stated in part:

> Provided, further, that any device otherwise defined as an attention-getting device which contains or displays any written message, business name, pictorial representation, logo, corporate symbol, silhouette, or other visual representation identifying or advertising a particular business, good, service or merchandise sold or available for sale on the premises where the device is erected, displayed or maintained shall be a "sign" as that term is defined in Section 4602 of the Houston Sign Code and shall be subject to the provisions of that Code, rather than this section.

3

Up until the time of the filing of Plaintiffs' suit, the City interpreted Section 28-37(a) to mean that any written message on an AGD that advertised a particular business, good, service or merchandise was a *non-generic* message. Any written message that did not identify or advertise a particular business, good, service or merchandise sold or available on the premises where the AGD was located was a *generic* message. Under this interpretation, the City prohibited AGDs with *non-generic* messages, but allowed identical AGDs with *generic* messages or no messages.

The City Sign Administration published a brochure ("Brochure") for use by persons desiring to display AGDs. The Brochure included information about the City's regulations concerning AGDs and the form to register an AGD. It described permitted attention-getting devices as including "Banners (Non-advertising in nature, such as "Grand Opening," "Sales" or "Specials")." The Brochure further stated that "Attention-Getting Devices cannot include advertising copy" and explains that "Attention-Getting Devices cannot include any written message, business name, logo, corporate symbol, silhouette or other visual representation identifying or advertising a particular business, good, service or merchandise sold or available for sale on the premises."

Section 28-37 (e) required anyone displaying an AGD on his, her or its premises to register the AGD with the Sign Administration. Failure to register an AGD was a misdemeanor punishable by a fine of not less than $150.00 and not more than $200.00 for each violation. Under Section 28-37, each day an AGD was displayed without registration was a separate violation.

According to Luycx, the City had not allocated any funds for the regulation of AGDs and the enforcement of Section 28-37. As a result, the regulations were enforced only when citizens filed complaints about particular AGDs. Sign Administration inspectors were instructed not to issue an NOV or a fine with respect to an AGD unless a citizen complained about it. If no complaint was filed

4

with respect to an illegal AGD, the City did not investigate it. Therefore, a number of businesses, including auto dealers, were allowed to continue displaying illegal AGDs without encountering any enforcement action. Luycx also testified that the provision of Section 28-37(b) that specified a time limit on the number of days that an AGD could be displayed was not uniformly enforced.

The relevant time period for this case is from December 13, 2004 to December 13, 2006. Plaintiffs filed their Original Complaint on December 13, 2006, and the City thereafter abandoned its regulation of AGDs. On November 23, 2008, the City effectively repealed Section 28-37 and promulgated City of Houston Ordinance No. 2008-992, which will take effect on January 1, 2010 and will effectively ban all AGDs. Ordinance No. 2008-992 is not at issue in this suit.

Houston Balloons has not utilized AGDs to display their own messages or promote their own business. Houston Balloons leased inflatables to customers, and erected and maintained them on behalf of their customers. On occasion, Houston Balloons would register inflatables leased to customers with the Sign Administration. Houston Balloons did this on behalf of its customers, but was under no obligation to do so. The registrations were made in the name of the customer leasing and displaying the AGD.

In some instances, Houston Balloons and/or its customers were able to register AGDs with *non-generic* messages with the Sign Administration, and later received NOVs and tickets from the Sign Administration for violating Section 28-37. In other instances, Houston Balloons attempted to register an AGD on behalf of a customer, but was told by the Sign Administration that the registration would not be allowed because of the AGD's *non-generic* content. Houston Balloons then asked that a sign permit be issued for the AGD under the Sign Code, and was told that no permit under the Sign Code would be issued.

Houston Balloons was directly subject to enforcement of the City's regulations of AGDs. On September 28, 2006, Houston Balloons received an NOV from the Sign Administration for an inflatable it was installing for a customer. On other occasions, Purtee was told by Sign Administration inspectors to halt the installation of inflatables balloons with *non-generic* messages at specific locations.

The City also issued NOVs and fines to customers of Houston Balloons. This enforcement caused the cancellation of a number of Houston Balloons' existing lease contracts. The regulations also had a chilling effect on new leases of inflatables because potential customers feared receiving NOVs and fines. Therefore, the City's regulations prevented Houston Balloons from leasing inflatables, causing it to lose profits. Houston Balloons presented evidence that it sustained lost profits during the relevant time of at least $927,841.00, accounting for a reasonable profit margin of 80%. Houston Balloons also incurred attorney's fees in prosecuting its claims in this case of $244,279, and costs and expenses in the amount of $16,479.

## II. Conclusions of Law

### A. Standing

The doctrine of standing determines "whether a litigant is entitled to have a federal court resolve his grievance." *Kowalski v. Tesmer*, 543 U.S. 125, 128 (2004). The inquiry into standing contains two distinct strands, which are analyzed as dual threshold matters:

(1) Article III standing, which enforces the Constitution's case-or-controversy requirement; and
(2) prudential standing, which embodies judicially self-imposed limits on the exercise of federal jurisdiction.

*Id.; Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 11-12 (2004) (internal citations omitted).

Article III, § 2 of the United States Constitution extends the judicial power of the United States solely to cases and controversies. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103 (1998). Article III standing requires three elements: (1) the plaintiff must have suffered an actual "injury in fact"; (2) there must be a causal connection between the injury and the complained-of conduct; and (3) it must be likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Here, both Plaintiffs and Defendant agree, and the evidence demonstrates, that Plaintiffs have Article III standing to bring the instant claims. First, Plaintiffs have established that they suffered "injury in fact" as a result of the City's regulation of AGDs, including inflatable balloons. Pursuant to the City's regulations, the City rejected Houston Balloons' applications for sign permits, filed on behalf of Houston Balloons' customers, where the inflatable balloons bore *non-generic* messages. The City also imposed NOVs and fines on Houston Balloons and its customers who leased and displayed inflatables with *non-generic* messages. On occasion, Houston Balloons was instructed by Sign Administration inspectors to halt the installation of inflatable balloons with *non-generic* messages at specific locations. Houston Balloons' customers subsequently cancelled their orders and contracts with Houston Balloons and halted leasing inflatable balloons. As a result, the demand for Houston Balloons' products declined and Houston Balloons suffered economic harm. This economic harm constitutes injury in fact. *Craig v. Boren*, 429 U.S. 190, 194 (1976) (direct economic injuries meet Article III's "injury in fact" requirement). Additionally, the Court finds that Plaintiffs' economic losses are a direct result of the City's regulation of AGDs. Therefore, Plaintiffs meet the first and second elements of Article III standing. Finally, if this Court were to find in Houston Balloons' favor, Houston Balloons would be compensated for past financial losses it suffered as a result of the City's

regulations in the form of compensatory damages. Therefore, an outcome in Plaintiffs' favor would redress past economic injuries. Accordingly, Plaintiffs have established Article III standing.

Even when a plaintiff has met the barrier of Article III standing, prudential limitations to standing may apply. According to the principal of prudential standing, a plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Powers v. Ohio,* 499 U.S. 400, 410 (1991); *Ward v. Santa Fe Indep. Sch. Dist.*, 393 F.3d 599, 606 (5th Cir. 2004) (*citing Warth v. Seldin*, 422 U.S. 490, 499 (1975)). In limited exceptions, a plaintiff may bring an action on behalf of third parties as long as the plaintiff demonstrates "some hindrance to the third party's ability to protect his or her own interests." *Powers*, 499 U.S. at 411. Further, prudential standing demands that a "plaintiff's complaint falls within the zone of interests protected by the law involved." *Elk Grove Unified*, 542 U.S. at 12 (*citing Allen v. Wright*, 468 U.S. 737, 751 (1984)). The inquiry is "whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth*, 422 U.S. at 500 (plaintiffs bringing suit on behalf of third parties lacked prudential standing because plaintiffs were not subject to the ordinance at issue).

In the Court's December 9, 2008 Order addressing Plaintiffs' First Amendment claim, the Court found that Plaintiff was subject to the prudential limitations of standing. (Instrument No. 50). The City's regulation of AGDs dictated the type of speech that could be displayed on an AGD. The City's regulations did not limit Houston Balloons' own speech, but rather the speech of Houston Balloons' customers. As such, Houston Balloons did not have standing in its own right to bring a First Amendment challenge to the City's regulation of AGDs. Additionally, Houston Balloons was not entitled to assert the rights of its third party customers under the overbreadth doctrine, because

the overbreadth doctrine does not apply to commercial speech. *Bd. of Trs. v. Fox*, 492 U.S. 469, 483 (1989).

Here, the Court addresses Houston Balloons' equal protection and due process claims against the City for its regulation of AGDs. The Court finds that Houston Balloons has standing in its own right to bring these claims and is not subject to the prudential limitations of standing. First, Section 28-37 defines AGDs as "devices erected, placed or maintained so as to attract attention to any commercial business, or any goods, products or services available on the premises of the commercial business . . . [such as] inflatable objects, including balloons . . . ." Section 28-37(b) states that "[i]t shall be unlawful for any person to place, erect, maintain, or display any attention-getting devices on any private or public property within the city . . . ." Houston Balloons was in the very business of leasing, erecting, installing, and maintaining inflatable objects on behalf of its customers. By the plain language of the regulation, Section 28-37(b) regulated Plaintiffs' ability to conduct its business of erecting and maintaining inflatables.

Further, Houston Balloons was directly subject to enforcement action under the regulations. On September 28, 2006, Houston Balloons received an NOV, which prevented it from installing an inflatable for a customer. On other occasions, Sign Administration inspectors told Houston Balloons to halt the installation of inflatables. These enforcement actions demonstrate that the Sign Administration's application of Section 28-37 interfered with Plaintiffs' ability to conduct its business. Accordingly, the City's regulations impacted Plaintiffs' own legal rights and interests. Houston Balloons has standing in its own right to bring the instant equal protection and due process claims.

The City concedes that Houston Balloons has standing to bring its equal protection and due process claims, but argues that it only has standing to assert the legal rights and interests of third

9

parties. Because the Court finds that Houston Balloons has prudential standing to bring the instant claims in its own right, the Court need not address the City's argument regarding third-party standing.

### B. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment requires that all persons similarly situated be treated alike. *Rolf v. City of San Antonio*, 77 F.3d 823, 828 (5th Cir. 1996). The Equal Protection Clause applies only "if the challenged governmental action classifies or distinguishes between two or more relevant groups." *Id.* (quoting *Qutb v. Strauss*, 11 F.3d 488 (5th Cir. 1993), *cert. denied*, 114 S. Ct. 2134 (1994)). "Where . . . the classification created by the regulatory scheme neither trammels fundamental rights or interests nor burdens an inherently suspect class, equal protection analysis requires that the classification be rationally related to a legitimate state interest." *Cornerstone Christian Schs v. Univ. Interscholastic League*, 563 F.3d 127, 139 (5th Cir. 2009) (citing *Walsh v. Louisiana High School Athletic Asso.*, 616 F.2d 152, 160 (5th Cir. 1980). Under rational-basis scrutiny, the regulation is "accorded a strong presumption of validity" and "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* (citing *Heller v. Doe*, 509 U.S. 312, 319-320 (1993)).

Here, the City prohibited AGDs with *non-generic* messages, while allowing *generic* messages or no messages on identical AGDs. This classification neither involves a fundamental right or interest nor burdens an inherently suspect classification. Therefore, the City's regulation of AGDs is subject to rational-basis scrutiny. The City stated that its goals in regulating AGDs were traffic safety and visual aesthetics. However, the City has provided no evidence demonstrating that its classification between AGDs with *non-generic* messages and AGDs with *generic* messages promoted safety or

10

aesthetics. Luycx, the City's Sign Administrator, was unable to explain how the City's regulations improved safety and aesthetics. Additionally, the Court finds no reasonably conceivable state of facts by which this classification promoted safety or aesthetics. Although the City's regulations are accorded a strong presumption of validity, the Court finds that there is no rational relationship between the regulations at issue and the City's stated goals. Accordingly, the City's regulation of AGDs violated Plaintiffs' Constitutional right of equal protection to erect and maintain inflatables with *non-generic* messages.

### C. Due Process

The Due Process Clause of the Fourteenth Amendment requires that the language of a legislative or administrative enactment "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Ford Motor Co. v. Texas DOT*, 106 F. Supp. 2d 905, 910 (W.D. Tex. 2000) (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108-109 (1972)). The Due Process Clause proscribes laws so vague that persons "of common intelligence must necessarily guess at [their] meaning and differ as to [their] application." *Women's Med. Ctr. v. Bell*, 248 F.3d 411, 421 (5th Cir. 2001) (citing *Smith v. Goguen*, 415 U.S. 566, 572, n.8 (1974)). A law is unconstitutionally vague if it is so indefinite that it allows arbitrary and discriminatory enforcement. *Id.* (citing *Grayned*, 408 U.S. at 108-109). The Fifth Circuit has held that a law or regulation violates the Due Process Clause if it "is inherently standardless, enforceable only on the exercise of an unlimited, and hence arbitrary, discretion vested in the state." *Id.* (citing *Margaret S. v. Edwards*, 794 F.2d 994, 999 (5th Cir. 1986)). "[I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them." *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 498 (1982) (citing *Grayned*, 408 U.S.

at 108-109).

Here, the City's regulations with respect to AGDs did not indicate to whom they applied. The plain language of Section 28-37 failed to indicate whether it applied to those who used AGDs to advertise their businesses, those who owned the land on which the AGDs were displayed, those who provided AGDs, or those who erected and maintained AGDs. Houston Balloons is in the business of leasing, erecting and maintaining AGDs to their customers. The City maintains that the regulations did not apply to Houston Balloons. Rather, the City argues that the regulations applied only to those who were using AGDs to advertise their business, such as the customers of Houston Balloons, because these advertisers were required to register their AGDs with the Sign Administration and were subject to enforcement action. However, Houston Balloons has provided uncontroverted evidence that it was also subject to enforcement action by the Sign Administration. Houston Balloons received at least one NOV and was told by Sign Administration inspectors on more than one occasion to halt installation of AGDs. This inconsistency demonstrates that the Sign Administration itself was unclear as to whom the regulations applied. The Court finds that the City's regulations were unlawfully vague because they failed to provide sufficient notice regarding to whom they applied and they lacked "explicit standards for those who apply them." *Hoffman Estates*, 455 U.S. at 498.

The City's regulations also failed to provide standards for enforcement by the Sign Administration. The language of the Sign Code and Section 28-37 did not specify how the Sign Administration was to enforce the regulations. Luycx testified that enforcement was conducted on an *ad hoc* basis – only when a citizen complained about a particular AGD – because the Sign Administration lacked funding to uniformly enforce the regulations. Consequently, the regulations were enforced against certain AGDs with *non-generic* messages, such as Plaintiffs' inflatables, but

12

they were not enforced against other similarly illegal AGDs with *non-generic* messages, such as light pole standards used by auto dealers. The City also did not uniformly enforce Section 28-37's limitations on the number of days that an AGD could be displayed during a given year. In some instances, AGDs were continuously displayed for several years. The Court finds that the City's regulations were unlawfully vague because they lacked uniform enforcement standards and were arbitrarily and inconsistently enforced by the Sign Administration.

Accordingly, the City's regulation of AGDs violated Plaintiffs' Constitutional right of due process.

### D. Damages

Pursuant to 42 U.S.C. § 1983, Houston Balloons is entitled to recover compensatory damages from the City for the financial losses it suffered as a result of the City's unconstitutional regulation of AGDs. The City's regulation of AGDs during the relevant time directly caused Houston Balloons financial losses of at least $927,841.00. Accordingly, Houston Balloons is entitled to compensatory damages of $927,841.00.

The City effectively repealed Section 28-37 on November 23, 2008, and the regulations at issue in this case are no longer in effect. Accordingly, Houston Balloons is not entitled to a declaratory judgment or injunctive relief.

Pursuant to 42 U.S.C. § 1988, Plaintiffs are entitled to recover their attorneys' fees in the amount of $170,850, which reflects a reduction of Plaintiffs' total attorneys' fees by twenty-five percent for an incomplete victory. Plaintiffs are also entitled to recover costs and expenses in the amount of $16,479. Plaintiffs are entitled to recover post judgment interest in the amount of 0.5%

per annum, compounded annually, from the date of judgment herein until paid. In an event of an appeal to the Fifth Circuit, the Court awards additional attorneys' fees of $25,000.

The Clerk shall enter this Order and provide a copy to all parties.

SIGNED on this the 24th day of June, 2009, at Houston, Texas.

_____
**VANESSA D. GILMORE**
**UNITED STATES DISTRICT JUDGE**